North Am. Elite Ins. Co. v Space Needle, LLC (2021 NY Slip Op 06769)





North Am. Elite Ins. Co. v Space Needle, LLC


2021 NY Slip Op 06769


Decided on December 02, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 02, 2021

Before: Kapnick, J.P., Webber, Oing, Moulton, Rodriguez, JJ. 


Index No. 651519/21 Appeal No. 14663 Case No. 2021-01400 

[*1]North American Elite Insurance Company, Plaintiff-Appellant,
v
Space Needle, LLC, Defendant-Respondent.


DLA Piper LLP (US), New York (Aidan M. McCormack of counsel), for appellant.
Foster Garvey P.C., New York (Malcolm Seymour of counsel), for respondent.



Order, Supreme Court, New York County (Joel M. Cohen, J.), entered on or about April 16, 2021, which denied plaintiff's motion for a preliminary injunction against defendant's litigating its insurance coverage action in a forum outside of New York, unanimously affirmed, with costs.
In 2019, Seattle based defendant Space Needle, LLC, operator of the Space Needle structure, procured an insurance contract from plaintiff Elite, a New Hampshire corporation authorized to sell insurance in the State of Washington. The insurance contract, which covers property damage to the Space Needle, as well as lost gross earnings and extra expense due to the interruption of business there, with a limit of liability of $160 million, provides, inter alia, that the laws of the State of New York "shall govern the construction and interpretation" of the policy and that the parties submit to the "exclusive jurisdiction" of New York State courts.
In March 2020, Space Needle notified Elite of a business operation loss claim concerning the Space Needle structure, and in January 2021, Space Needle elaborated that the claim was for losses associated with the Washington State government's Covid-related closure of the Space Needle to the public, requesting a coverage determination under Washington law concerning the policy coverage provisions and exclusions.
In March 2021, Elite commenced the instant action in New York County seeking a declaration that it owes no coverage to Space Needle for its Covid-related losses under the policy's terms and exclusions.
Supreme Court denied Elite's motion for a preliminary injunction. The court found that Elite did not show a likelihood of success on the merits or the balance of equities in seeking to enforce the New York exclusive forum selection clause.
We agree with Supreme Court that plaintiff did not demonstrate either a likelihood of success on the merits of its claim for an anti-suit injunction based on the contractual choice-of-law and forum selection clauses of the parties' insurance contract, or a balancing of the equities in its favor. As an insurance company authorized to sell insurance in Washington, plaintiff was required to comply with the Washington Insurance Code's prohibition against choice-of-law and forum selection clauses in insurance policies sold in Washington (Wash Rev Code Chapter 48). The Code (RCW) expressly provides that no insurance contract delivered or issued for delivery in this state (Washington) . . . "shall contain any condition, stipulation or agreement (a) requiring it to be construed according to the laws of any other state or country. . .; or (b) depriving the courts of this state of the jurisdiction of action against the insurer . . ." (RCW 48.18.200 [1]). RCW further specifies that any such agreement violating this prohibition "shall be void, but such voiding shall not affect the validity of the other provisions of the contract" (RCW 48.18.200 [2]). Thus, plaintiff has not demonstrated that the [*2]equities tip in its favor where it is attempting, as Supreme Court stated, "a blatant end run around" Washington's prohibition against choice-of-law and forum selection clauses.
The cases relied upon by plaintiff do not lead to a contrary result. In Berkley Assur. Co. v MacDonald-Miller Facility Solutions, Inc. (2019 WL 6841419, *2-6, 2019 US Dist LEXIS 217761, *5-16 [SD NY, December 16, 2019, No. 19-CV-7627 (JPO)]), Sixth & Lenora Apartments LLC, the owner of Via6 Apartments, a property located in Seattle, Washington, asserted claims against the defendant MacDonald-Miller Facility Solutions, Inc., alleging that the plumbing system installed at Via6 Apartments was defective. MacDonald-Miller was covered by a primary commercial general liability policy issued by Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation. MacDonald-Miller was also covered by a professional liability policy issued by the plaintiff Berkley Assurance Company (Berkley) which contained a New York choice-of-law clause. Berkley sought a declaratory judgment that it had no duty to defend MacDonald-Miller in the state-court action. Berkley also sought a declaratory judgment that New York law governed the scope of Berkley's obligations. The Court turned to the body of law selected by the contracting parties — that is, the law of New York. The Court found that under New York law, forum selection clauses are not "void ab initio." The Court then applied New York state law and upheld the forum selection clause. 
Accordingly, Berkley, honoring the choice-of-law clause, applied New York rather than Washington law to the issue and rejected the argument that the clause was void. Berkley then considered whether the forum selection clause, pursuant to which the parties agreed to submit to New York as a forum, was void ab initio. Having rejected the argument that the New York choice-of-law clause was void and concluding that the question of whether a forum selection clause is void ab initio is an interpretive dispute about the correct construction of the policy, the district court applied the chosen New York law to find that such clauses are not void ab initio and are even enforceable regardless of any inconvenience to the parties in cases involving $1 million or more. Because it applied New York law, it found that the Washington law on forum selection clauses was irrelevant, and it noted that, in any event, the permissive venue clause in that case was not void in violation of the Washington law; a mandatory venue clause, like the one here, was not at issue. In Amazing Home Care Servs., LLC v Applied Underwriters Captive Risk Assur. Co. Inc. (191 AD3d 516 [1st Dept 2021]), also relied upon, plaintiff does not address the existence/enforceability of choice of law/venue provisions in the face of a statute like the Washington one that bars certain contracting parties from including such contractual clauses. In Amazing Home Care, the plaintiffs alleged that the defendants [*3]engaged in a fraudulent scheme under which they sold the plaintiffs a Reissuance Participation Agreement (RPA) without taking the necessary steps to have the RPA approved by New York State's Department of Financial Services as required under New York law. The RPA contained a forum selection clause requiring any RPA-related litigation to be prosecuted in Nebraska, which is AUCRA's principal place of business. This Court, applying New York law in determining whether to enforce a forum selection clause, held that the plaintiffs' specific challenges to the RPA — including their claim that AUCRA's failure to file the RPA with the New York State Department of Financial Services voids the RPA — must be litigated in Nebraska, pursuant to the forum selection clause.
Finally, the 9th Circuit decision in CLMS Mgt. Servs. Ltd. Partnership v Amwins Brokerage of Ga. LLC (8 F4th 1007 [9th Cir 2021]) is inapplicable and does not support a different result. CLMS Mgt. Servs. Ltd. Partnership presented an issue of first impression in that circuit of whether the McCarran-Ferguson Act (15 USC §§ 1011—15) allowed a Washington statute to reverse preempt the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, a multilateral treaty. The 9th Circuit affirmed the district court's order compelling arbitration concluding that the relevant provision of the Convention is self-executing, and therefore not an "Act of Congress" subject to reverse preemption by the McCarran-Ferguson Act. Obviously, that is not the case here.
While this Court in Amazing Home Care stated that it applies New York law in determining whether to enforce a forum selection clause, that decision means only that the New York policy in favor of such clauses need not give way where there is a sister state statute like the Nebraska Choice of Forum Act, which provides that the enforceability of a forum selection clause is evaluated by the terms of the Model Uniform Choice of Forum Act. There may be a reasonable basis for this Court to decide that its policy need not give way where the sister state has a statute that uses different standards for generally assessing when a forum selection clause is valid, versus when a State, like Washington, has clearly specified no forum selection clause is valid in a particular kind of contract.
Further, plaintiff did not demonstrate a likelihood that the New York policy favoring the right of parties to include contractual clauses choosing New York law and New York as the exclusive forum for coverage disputes under an insurance contract takes precedence over the Washington state statute prohibiting the inclusion of those clauses in this type of insurance contract. Enforcement of these clauses may be determined to be unjust (see Sterling Natl. Bank v Eastern Shipping Worldwide, Inc., 35 AD3d 222 [1st Dept 2006]) because the clauses are void under the Washington law with which plaintiff agreed to comply (see e.g. Providence Health & Servs. v Certain Underwriters [*4]at Lloyd's London, 358 F Supp 3d 1195, 1199 [WD Wash 2019]).
Finally, Space Needle raises legitimate concerns about the justice and reasonableness of applying the clauses here over the Washington law, given that Elite knew or should have known that by participating in the Washington insurance market at the time it issued the instant policy it had an obligation not to include such clauses and that such clauses were void. While Space Needle was a sophisticated buyer of insurance that agreed to the policy with knowledge of the void clauses, what the implications of this should be in relation to Elite's conduct must also be given further consideration.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 2, 2021